706 F.2d 228
 113 L.R.R.M. (BNA) 2321, 113 L.R.R.M. (BNA) 3226,
97 Lab.Cas. P 10,070
 The LACKAWANNA LEATHER COMPANY, Appellant,
v.
UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION,
AFL-CIO & CLC, District Union No. 271, formerly
Amalgamated Meatcutters & Butcher
Workmen of North America,
AFL-CIO (Local 271),
Appellee.
The LACKAWANNA LEATHER COMPANY, Appellee,
v.
UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION,
AFL-CIO & CLC, District Union No. 271, formerly
Amalgamated Meatcutters & Butcher
Workmen of North America,
AFL-CIO (Local 271),
Appellant.
 Nos. 81-2434, 82-1052.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1983.
Decided April 25, 1983.
 
 Robert L. Berry (argued), Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for appellant and cross-appellee.
 Thomas F. Dowd (argued), Dowd & Fahey Law Offices, Omaha, Neb., for appellee and cross-appellant.
 Before LAY, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, HEANEY, BRIGHT, ROSS, McMILLIAN, ARNOLD, JOHN R. GIBSON, and FAGG, Circuit Judges, en banc.
 BRIGHT, Circuit Judge.
 
 
 1
 Lackawanna Leather Company (Lackawanna) appeals the district court's[1] grant of summary judgment enforcing an arbitration award in favor of United Food & Commercial Workers International Union, AFL-CIO & CLC, District Union No. 271 (Union). Lackawanna contends the district court should have vacated a portion of the award because the arbitrator exceeded the scope of his authority by interpreting a section of the collective bargaining agreement not placed in issue by the parties. The Union cross-appeals from the district court's denial of attorneys' fees, claiming entitlement to fees on grounds that Lackawanna wrongfully refused to comply with the arbitration award. We affirm the judgment of the district court.I. Background.
 
 
 2
 On March 11, 1980, Lackawanna served one of its employees, Charles Hodges, with a written notice of poor work performance. The notice reflected Lackawanna's dissatisfaction with Hodges' operation of a hide-shaving machine. Upon receiving the warning, Hodges also received a notice of discharge, pursuant to section 8.4 of the collective bargaining agreement then in effect. Section 8.4 provided in pertinent part:
 
 
 3
 An employee, who during the course of a years [sic] period, receives three written notices in relation to inefficiency, absesenteeism [sic], etc. shall be immediately discharged upon receipt of the third notice.
 
 
 4
 Lackawanna discharged Hodges because he had received two prior notices, one for an unexcused absence, and one for excessive tardiness, in less than a year's time.
 
 
 5
 The Union filed a grievance on behalf of Hodges, contending that Lackawanna did not issue the warning notice and discharge for justifiable cause under the labor agreement, and that Lackawanna's action, in fact, was taken in retaliation for Hodges' refusal to take vacation time rather than draw unemployment during a recent plant shutdown. After the initial grievance procedure proved unsuccessful, the parties submitted the grievance to arbitration.
 
 
 6
 Following a hearing, the arbitrator found that although Lackawanna had justifiable cause for issuing the warning notice, it had wrongfully discharged Hodges. The arbitrator held that section 8.4 of the collective bargaining agreement allowed discharge only when the employer issued three written notices for the same type of infraction. Because Hodges had not received any prior notices for poor work, the arbitrator held that Hodges should not have been discharged and ordered him reinstated.
 
 
 7
 Lackawanna filed a complaint in the district court claiming the arbitrator both exceeded his authority by interpreting section 8.4, when neither side had placed the meaning of section 8.4 in issue, and interpreted section 8.4 incorrectly. Lackawanna sought an order either vacating and correcting that portion of the award dealing with section 8.4, or, in the alternative, reopening arbitration in order to allow it to present evidence regarding the meaning of section 8.4. The district court granted summary judgment in favor of the Union, and Lackawanna appealed.[2]
 
 
 8
 II. Discussion.
 
 
 9
 A. Arbitrator's Scope of Authority.
 
 
 10
 Lackawanna contends the arbitrator exceeded his authority in interpreting section 8.4 because neither the Union nor Lackawanna disputed the meaning of section 8.4 or placed its interpretation in issue. Lackawanna argues that the Union and Lackawanna had always understood section 8.4 to allow discharge after the employee received three written notices of any combination of infractions. According to Lackawanna, the only issue placed before the arbitrator involved whether Lackawanna properly issued a poor work notice to Hodges. Consequently, Lackawanna argues, that portion of the arbitrator's award which interprets section 8.4 incorrectly must be vacated. We disagree. In our judgment, the record demonstrates that the arbitration award properly rests on the collective bargaining agreement.
 
 
 11
 An arbitrator's award must be upheld as long as it "draws its essence" from the collective bargaining agreement. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596-97, 80 S.Ct. 1358, 1360-61, 4 L.Ed.2d 1424 (1960); United Food & Commercial Workers, Local No. 222, AFL-CIO v. Iowa Beef Processors, Inc., 683 F.2d 283, 285 (8th Cir.1982). In determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts being resolved in favor of the arbitrator's authority. Resilient Floor and Decorative Covering Workers, Local Union 1179 v. Welco Mfg. Co., 542 F.2d 1029, 1032 (8th Cir.1976).
 
 
 12
 Lackawanna claims that the arbitrator acted outside his jurisdiction because neither party ever submitted the "proper interpretation" of section 8.4 to him. That argument is seriously flawed. Whether the arbitrator erred in reaching a particular result is irrelevant to the determination of whether the arbitrator acted within his jurisdiction. The central issue is whether the arbitrator acted within his jurisdiction in interpreting section 8.4. We hold that he did so act.
 
 
 13
 Lackawanna's justification for discharge required that it establish a factual and contractual basis for the discharge. Similarly, the Union's challenge of the discharge required that it establish a factual and contractual basis for its challenge. The record demonstrates that both parties supported their relative positions by relying on the collective bargaining agreement.
 
 
 14
 The grievance letter filed by the Union contended that Hodges' warning notice and discharge were "not for justifiable cause as per the labor agreement. " (Emphasis added). Lackawanna introduced evidence during the arbitration hearing that Hodges' discharge was in accordance with company policy and the collective bargaining agreement. At the outset of the case, the arbitrator outlined the issue as follows:
 
 
 15
 Did the Company have proper cause to warn and terminate Charles Hodges for poor work on March 7, 1980? If not, what is the proper remedy? [Emphasis added.]
 
 
 16
 Thus, the arbitrator considered each element of the issue separately, asking, first, whether Hodges' conduct justified a warning notice, and, second, whether a warning notice properly made would justify the discharge.
 
 
 17
 After concluding that Hodges' conduct justified a warning notice, the arbitrator considered Lackawanna's right to terminate Hodges. The arbitrator first recognized Lackawanna's position "that under Section 8.4 discharge is automatic upon receipt of a third warning notice for any reason." Next, after observing that neither party introduced any evidence regarding the interpretation of section 8.4, and that "[a] Company witness testified that the discharge of Hodges was in accord with Company policy, but no prior instances of the administration of such a policy were introduced[,]" the arbitrator referred to the usual interpretation given provisions similar to section 8.4.
 
 
 18
 The arbitrator observed that provisions such as section 8.4 are common in collective bargaining agreements and that such provisions are commonly interpreted to require multiple notices of specific offenses in order to justify discharge. The arbitrator construed section 8.4 to require three notices of inefficiency to justify discharge. Here, the company gave Hodges only one such notice. Thus, by determining the meaning of section 8.4, the arbitrator addressed the precise issue presented to him in the grievance letter: whether the warning notice and discharge constituted justifiable cause "as per the labor agreement."
 
 
 19
 That the parties failed to introduce evidence regarding the interpretation of section 8.4 does not constitute a valid ground for vacating the award. A provision such as section 8.4 and its ordinary interpretation must be reached in any decision made by an arbitrator interpreting a collective bargaining agreement. Without evidence as to the meaning of the contract clause in question, an arbitrator may properly give that clause a reading ordinary to similar labor contracts. To hold otherwise relieves the employer of its burden of showing that its actions were justified.
 
 
 20
 The Supreme Court has held that an arbitrator does not exceed the scope of the issue presented to him as long as the arbitrator "[stays] within the areas marked out for his consideration." United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 598, 80 S.Ct. at 1361. In applying this principle to the instant case, District Judge Schatz reasoned as follows:It is clear that the Union wished the arbitrator to decide whether Mr. Hodges' "warning notice and his discharge of March 11, 1980 is ... for justifiable cause as per the labor agreement. ["] Absent a formal submission of the issue, this grievance letter of March 12, 1980, served to present the issue to the arbitrator. The Court notes that very little, if any, evidence was presented at the arbitration hearing with regard to the past interpretations of section 8.4. However, that is not dispositive. What is dispositive is the fact that the Company relied on section 8.4 to discharge Mr. Hodges, and the grievance submitted to the arbitrator asked whether there was just cause for the warning and discharge. In United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, an arbitrator's award was challenged as going beyond the scope of the submission. The court held that he had not, noting that "he had stayed within the areas marked out for his consideration." 363 U.S. at 597 [80 S.Ct. at 1361]. In the instant case, Lackawanna may not have agreed with [the arbitrator's] construction of Section 8.4 of the CBA, but it cannot be said that the arbitrator went outside the areas marked for his consideration. "It is the arbitrator's construction which was bargained for, and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 599 [80 S.Ct. at 1362]. * * *
 
 
 21
 This Court will not review the reasoning of the arbitrator; it has merely determined that [the arbitrator] reached a rational conclusion based on the terms of the CBA and the grievance submitted to him. * * * Therefore, the defendant Union is entitled to have the arbitrator's decision enforced. [The Lackawanna Leather Co. v. United Food & Commercial Workers Int'l Union, AFL-CIO, & CLC, District Union No. 271, etc., No. 80-0-398, slip op. at 5-7 (D.Neb. Nov. 24, 1981) (footnotes omitted).]
 
 
 22
 After reviewing the record, we agree with the reasoning of the district court.
 
 
 23
 Lackawanna also raises the equitable doctrines of "unclean hands" and equitable estoppel in contesting enforcement of the award. Lackawanna claims that the Union should not benefit from the arbitrator's award after refusing to agree to reopen the arbitration hearing when it knew the arbitrator's decision was wrong. This argument lacks merit. Lackawanna carried the burden of proving its actions were justified under the labor contract. Regardless of the graciousness or ungraciousness of the Union's actions, Lackawanna cannot relieve its burden by asserting equitable doctrines in this proceeding. The Union did not mislead Lackawanna or make false representations regarding its claim upon which Lackawanna relied. See United States v. Aetna Casualty & Surety Co., 480 F.2d 1095, 1099 (8th Cir.1973) (estoppel not available for protection of one suffering loss solely by reason of own failure to act).
 
 
 24
 B. Attorneys' Fees.
 
 
 25
 In its cross-appeal, the Union seeks attorneys' fees, contending that Lackawanna acted without justification in refusing to comply with the arbitrator's award. Attorneys' fees are ordinarily not recoverable by the prevailing party in federal litigation unless authorized by statute or justified by circumstances in which the losing party has acted in bad faith. General Drivers, Helpers and Truck Terminal Employees, Local No. 120 v. Sears, Roebuck & Co., 535 F.2d 1072, 1077 (8th Cir.1976). Attorneys' fees are not authorized by statute in suits to enforce arbitration awards. Id. The district court found that Lackawanna did not act in bad faith in questioning the arbitrator's award. Because we find no abuse of discretion in the district court's determination, we affirm the court's denial of the Union's claim.
 
 
 26
 III. Conclusion.
 
 
 27
 We affirm the judgment of the district court and order that the arbitrator's award be enforced. In addition, we uphold the district court's denial of the Union's request for attorneys' fees. Costs are awarded to appellee.
 
 
 28
 JOHN R. GIBSON, Circuit Judge, concurring in part and dissenting in part, with whom FLOYD R. GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge, join.
 
 
 29
 I concur in Part II.B of the majority opinion. I respectfully dissent from Part II.A because, in my view, the question of the proper interpretation of section 8.4 of the collective bargaining agreement was never submitted to the arbitrator for resolution.
 
 
 30
 On March 12, 1980, the Union filed a written grievance on behalf of Hodges. The grievance letter provided:
 
 
 31
 This letter is to be considered an official grievance on behalf of Charles Hodges' warning notice and discharge. It is the position of Mr. Hodges and the Union that the warning notice and his discharge of March 11, 1980 is not for justifiable cause as per the labor agreement.
 
 
 32
 Be further advised that it is Mr. Hodges' and the Union's position that this action is directly connected to the fact that Mr. Hodges refused to take his vacation and elected to draw unemployment during the recent plant shutdown.
 
 
 33
 Therefore, it is the request of Mr. Hodges and this Union that he be reinstated to his position with full back pay and seniority and the warning notice be removed from his file.
 
 
 34
 The majority opinion concludes that the language "not for justifiable cause as per the labor agreement " placed interpretation of section 8.4 in issue. I disagree. A fair reading of the letter does no more than indicate that the warning notice and discharge was not for justifiable cause under the labor agreement. Read in its entirety, the letter does no more than place into issue the propriety of the warning notice and the applicability of section 8.4. The letter does not, however, raise the question of that section's meaning and interpretation, and the language on which the majority bases its opinion, "as per the labor agreement," when read in the context of the letter, does not create such an issue.
 
 
 35
 Although the Union now contends that the proper interpretation of section 8.4 was part of the arbitration submission, this after-the-fact rationalization is belied by the Union's own conduct. The only issue disputed at either the informal grievance proceeding or the arbitration hearing was whether the written notice for poor work issued on March 11, 1980 was factually justified. Neither side, however, raised any issue, made any argument, or presented any evidence on whether Lackawanna could combine written notices for different types of infractions under section 8.4 in automatically terminating Hodges. Patently, neither party even thought that the interpretation of section 8.4 was in issue.
 
 
 36
 At the completion of the arbitration hearing, the arbitrator ruled that Lackawanna was justified in issuing the poor work notice. This conclusion is not contested here. What is contested is the arbitrator's further holding that section 8.4 of the CBA required three written notices for the same infraction and that Hodges' dismissal was improper since his three written notices were for different infractions. The arbitrator ordered Hodges to be reinstated but his warning notice for poor work to remain in effect.
 
 
 37
 Although a reviewing court gives deference to an arbitrator's decision, judicial deference does not grant carte blanche approval to any decision that an arbitrator might make. Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1, 611 F.2d 580, 583 (5th Cir.1980) (citing International Association of Machinists v. Hayes Corp., 296 F.2d 238, 243 (5th Cir.1961), reh'g denied, 316 F.2d 90 (5th Cir.1963) (per curiam)). An arbitrator can bind the parties only on issues that they have agreed to submit, and whether the arbitrator has exceeded those bounds is a proper issue for judicial determination. International Association of Machinists, District 776 v. Texas Steel Co., 639 F.2d 279, 283 (5th Cir.1981) (citing Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1, 611 F.2d at 583). A court may vacate a labor arbitration award if the arbitrator exceeds the scope of the submission by ruling on issues not presented to him by the parties. See, e.g., Kansas City Luggage & Novelty Workers Union, Local No. 66 v. Neevel Luggage Manufacturing Co., 325 F.2d 992, 994 (8th Cir.1964); Local Union No. 2-477, Oil, Chemical & Atomic Workers, International Union v. Continental Oil Co., 524 F.2d 1048, 1050 (10th Cir.1975), cert. denied, 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976); Textile Workers Union of America, Local Union No. 1386 v. American Thread Co., 291 F.2d 894, 900-01 (4th Cir.1961); cf. Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., 607 F.2d 649, 651-52 (5th Cir.1979) (commercial arbitration award may be vacated if arbitrator awards on matter not submitted).[1] See generally R. Gorman, Basic Text on Labor Law, Unionization, and Collective Bargaining 588 (1976); D. Nolan, Labor Arbitration Law and Practice in a Nutshell 88-92 (1979); St. Antoine, Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and its Progeny, 75 Mich.L.Rev. 1137, 1150-52 (1977).
 
 
 38
 There is no dispute in this appeal as to whether the interpretation of section 8.4 is an arbitrable issue. The basic issue raised is whether the arbitrator exceeded the scope of the submission by construing the meaning of section 8.4 of the CBA and deciding that the three notices for work infractions required by section 8.4 to terminate an employee had to be for the same type of infraction. Careful review of the record can only justify a conclusion that interpretation of section 8.4 was not an issue that was "specifically or necessarily included in the subject matter submitted to arbitration," and that the arbitrator, by construing section 8.4, exceeded the scope of the submission. Kansas City Luggage & Novelty Workers Union, Local No. 66 v. Neevel Luggage Manufacturing Co., 325 F.2d at 994; cf. Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co., 330 F.2d 562, 566 (8th Cir.1964) (arbitrator exceeds jurisdiction when award goes beyond limitation contained in collective bargaining agreement).
 
 
 39
 The Union makes two primarily factual arguments (which the district court found dispositive) to sustain the arbitrator's authority in this case.
 
 
 40
 First, the Union contends that the inclusion of the phrase "and discharge" in the grievance letter, supra, implicated the interpretation of section 8.4 as an issue at arbitration. I disagree. As stated previously, the grievance letter, when read in its entirety, does no more than raise the applicability of section 8.4, not its meaning and interpretation. Thus, the Union's narrow focus on the quoted phrase is misplaced. By itself, the phrase is so ambiguous and vague that it would not have put the parties fairly on notice that the proper interpretation of section 8.4 was being submitted to arbitration. Cf. Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., 607 F.2d at 651 (parties to commercial arbitration entitled to notice). Adequate notice of the issues is a prerequisite to a fundamentally fair hearing, for without such notice the parties would be effectively denied an opportunity to prepare and present their case at arbitration. I believe that the grievance letter in this case failed to provide the parties with such adequate notice.
 
 
 41
 Moreover, the record shows no evidence that the parties had any understanding to the contrary.[2] Rather, the opposite obtains. Testimony from the deposition of Arbitrator Doyle shows that neither party raised any issue or presented any evidence to the effect that Lackawanna could not combine written notices for different types of infractions under section 8.4 in automatically terminating Hodges. Affidavits submitted by Lackawanna are further confirmation of the same. Finally, in its Memorandum of Law in Support of Defendant's Cross-Motion for Summary Judgment, even the Union concedes that "Section 8.4 was not challenged at the hearing ...." Altogether, this is persuasive evidence that the interpretation of section 8.4 was not within the contemplation of the arbitration submission.
 
 
 42
 Secondly, the Union contends that the arbitrator was required to interpret section 8.4 by virtue of Lackawanna's reliance on that section in terminating Hodges. This argument assumes, however, that the parties understood there to be an issue in the first instance. In light of the evidence considered above to the contrary, the Union's argument is unsound. The company's reliance on section 8.4 does not demonstrate the company had notice that the interpretation of section 8.4 was in issue; rather, it tends to show merely that the company was automatically applying to Hodges what had been a long-standing and uniform company practice concerning the termination of employees under that section.[3]
 
 
 43
 The Supreme Court's Steelworkers Trilogy sets forth the principles which are to govern the arbitration process. The question of whether the arbitrator erred in reaching his result is not before us. Nor are we concerned with whether the arbitrator's interpretation of the contract may differ from what we believe it should be. Rather, the sole question before us, under United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), is whether the arbitrator went beyond those "areas marked out for his consideration." I believe the arbitrator has exceeded those boundaries and, in doing so, has denied the parties their rightful opportunity to prepare and present their case. The result is a clear deprivation of industrial due process.
 
 
 44
 Accordingly, we should reverse and remand to the district court to order the arbitration hearing to be re-opened on the question of the proper interpretation of section 8.4.
 
 
 45
 FLOYD R. GIBSON, Senior Circuit Judge, concurring in part and dissenting in part.
 
 
 46
 I join Judge John Gibson's concurring and dissenting opinion but feel compelled to add a few comments of my own.
 
 
 47
 The majority argues that notice of the issue of Hodges' "termination" put the parties on notice of the issue of whether the warnings had to be for the same offense. However, there is absolutely nothing in the record to indicate that the union, the company, or the arbitrator thought the same offense question was at issue at the time of the hearing. The company reasonably had no idea there was a same offense issue; neither did the union. The arbitrator sub silentio sprung his own interpretation on this non-issue in his award without an iota of evidence in the record to support it, all in apparent direct conflict with past company practices as recognized by all the parties. The sandbagging that occurred in this case is simply a miscarriage of justice, and makes the arbitration proceeding in this case a farce.
 
 
 48
 It is difficult for me to fathom why the union and a majority of this court are fearful of a remand so that the now decisive issue in this case can be fairly and fully presented to an impartial arbitrator.
 
 
 
 [1]
 The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska
 
 
 [2]
 Initially, a divided panel reversed the district court. On December 17, 1982, however, we issued an order granting a rehearing en banc. The parties reargued the case before the court en banc on January 13, 1983. The effect of this opinion serves to vacate the panel opinion previously filed on November 10, 1982 and reported at 692 F.2d 536
 
 
 [1]
 The Totem court, in vacating a commercial arbitration award, relied on the United States Arbitration Act Secs. 10(c)-10(d), 9 U.S.C. Secs. 10(c)-10(d) (1976)
 
 
 [2]
 In determining the scope of an arbitration submission, courts consider a number of factors to be relevant, including correspondence between the parties, arguments and discussion during arbitration, and evidence of confusion, uncertainty, or dissent in the record. See Local Union No. 2-477, Oil, Chem. & Atomic Workers, Int'l Union v. Continental Oil Co., 524 F.2d at 1050; Kroger Co. v. International Bhd. of Teamsters, Local No. 661, 380 F.2d 728, 731-32 (6th Cir.1967); Sweeney v. Morganroth, 451 F.Supp. 367, 369-70 (S.D.N.Y.1978); Delta Lines, Inc. v. Brotherhood of Teamsters, Local 85, 409 F.Supp. 873, 875-76 (N.D.Ca.1976); College Hall Fashions, Inc. v. Philadelphia Joint Bd., Amalgamated Clothing Workers of Am., 408 F.Supp. 722, 729 (E.D.Pa.1976). The majority concludes, without citing any support, that the failure to present any evidence is not a "valid ground." It is illogical to single out a particular factor as "invalid" when a variety of factors need to be considered in determining the scope of an arbitration submission. Here, when the failure to present evidence is considered along with other circumstances, it is evident that neither party presented any evidence on the interpretation of section 8.4 because neither party thought that was an issue
 
 
 [3]
 Exhibit X, attached to Lackawanna's motion for summary judgment, demonstrates that seventeen employees had been terminated pursuant to section 8.4 since June 15, 1975 for a combination of different types of infractions