ST. LOUIS THEATRICAL COMPANY, Appellee,

v.

ST. LOUIS THEATRICAL BROTHERHOOD LOCAL 6 OF the INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE OPERATORS OF the UNITED STATES AND CANADA, Appellant.

No. 82–1886.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1983.

Decided Aug. 23, 1983.

John J. Gazzoli, Jr., St. Louis, Mo., for appellant; Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., of counsel.

Bruce S. Feldacker, P.C. by Linda Krueger Maclachlan, St. Louis, Mo., for appellant.

*MARION T. BENNETT, United States Circuit Judge for the Federal Circuit, sitting by designation.

Before BRIGHT, BENNETT* and FAGG, Circuit Judges.

BRIGHT, Circuit Judge.

The St. Louis Theatrical Brotherhood, Local 6 (Union) appeals from the district court's[1] judgment granting the St. Louis Theatrical Company's (Company) motion for summary judgment. The district court partially set aside an arbitrator's award reinstating with partial backpay a former Company employee. We affirm. 543 F.Supp. 1 (D.C.Mo.1981).

I. *Background.*

This dispute arises out of a brief series of events that culminated in the Company's discharging Richard McCarthy, its head electrician and the Union's shop steward. The Company engages in the booking and presentation of touring Broadway shows at the American Theater in St. Louis, Missouri. The Union represents the Company's stagehands and has entered into a collective bargaining agreement with the Company. Each of the Company's four permanent employees is designated as a department head. The Company employs additional stagehands as needed. All of these employees are members of the Union's bargaining unit.

During the last week of February, 1981, many of the Company's temporary and permanent employees worked substantial overtime hours preparing for the Company's performance of a world premiere musical, "Copperfield." On March 4, at 4:00 p.m., Jack Beckman, the Union's business agent, picked up his members' paychecks for the ten day period ending on March 1. Beckman soon realized that many of the checks were inaccurate; some were $1,000 less than he calculated they should be.

Beckman immediately began looking for the Company's president, Frank Pierson. Unable to locate Pierson, Beckman walked

1. The Honorable John K. Regan, United States Senior District Judge for the Eastern District of Missouri.

approximately five feet onto the stage during rehearsal and directed McCarthy to turn up the house lights. McCarthy did so and the three actors on stage stopped rehearsing. Beckman, still on the stage, asked his membership to assemble to discuss the paychecks.

Soon thereafter, Pierson appeared and suggested that he, Beckman, and the four department heads discuss the paycheck problem in his office. Everyone agreed; once in Pierson's office, they also agreed that the rehearsal could continue. The rehearsal resumed and matters began to return to normal. The work stoppage lasted a total of ten to fifteen minutes.

The following day, Pierson terminated McCarthy for his participation in the work stoppage. Pierson told McCarthy that he regretted discharging him. He also referred to a prior incident in which McCarthy had gone to a nearby bar during a show's intermission. The Company took no disciplinary action against any of the other employees involved in the work stoppage. The Union filed a grievance on McCarthy's behalf and the matter proceeded to arbitration.

The arbitrator held that the March 4 incident constituted an unauthorized work stoppage in violation of the collective bargaining agreement. He also held that McCarthy participated in the work stoppage and was therefore subject to discipline under the collective bargaining agreement. The arbitrator, however, set aside McCarthy's discharge and reduced his discipline to a 30-day suspension without pay.

The Company refused to comply and filed suit in the district court to vacate the award, except for that part of it which found McCarthy guilty of participating in the work stoppage. The Union counterclaimed for enforcement of the arbitrator's award. Thereafter the parties filed cross motions for summary judgment.

The district court determined that the arbitrator had exceeded his authority under the collective bargaining agreement and granted the Company's motion. The district court held that the arbitrator exceeded his authority under the collective bargaining agreement in awarding reinstatement and backpay. Specifically, the court held that the collective bargaining agreement bound the arbitrator to consider only "the fact, *vel non,* of [McCarthy's] participation in the work stoppage," and that the nature and extent of the punishment imposed upon McCarthy was not an arbitrable issue once his participation had been established. Only the Union has appealed this district court judgment.

## II. *Discussion.*

If an arbitrator's award does not draw its essence from the collective bargaining agreement, the reviewing court must vacate it or modify it accordingly. *Vulcan-Hart Corp. v. Stove, Furnace & Allied Appliance Workers International Union, Local No. 110,* 671 F.2d 1182, 1184 (8th Cir.1982). Although a reviewing court must give great deference to arbitration awards, this deference is not unlimited. Thus, "[w]hen the arbitrator's words manifest an infidelity to his obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

The pertinent provisions of the party's collective bargaining agreement are as follows:

(30) * * *

(c) The Arbitrator may consider and decide only the particular issue or issues presented by the grievance or by the parties submitted to him in writing and only issues relating to the interpretation and/or application of the Agreement. The Arbitrator shall not have jurisdiction over the rights of management not expressly and specifically restricted by this Agreement and shall have no right to alter, amend, modify or change the terms or provisions of this Agreement. The decision of the Arbitrator shall be final and binding.

(31) *No Strikes—No Lock Outs.*

There shall be no slow-downs, picketing, boycotts, cessation of work, strikes, interference with the business of the Company or other disruptive activities by either employees or the Union for any reason whatsoever during the term of this Agreement.

The Company shall not lock out its employees.

*Any employee violating this provision may be disciplined or discharged and shall have no recourse to any other provisions of this Agreement except as to the fact of participation.* In the event of any unauthorized action of this character, the Union, upon receiving notice thereof, shall use every reasonable means to obtain an end to the violation of the article and a return to work of its members. In addition to the above, the Company may pursue any other remedies it may have in law or in equity. [Emphasis added.]

Under this agreement, the arbitrator's authority is narrow. The arbitrator must determine whether the grievant did, in fact, participate in a prohibited activity. In the case at bar, the arbitrator found that "[McCarthy] participated in [the] work stoppage by the overt act of turning on the house lights and * * * must, therefore, be subject to discipline." Having found discipline justified, the arbitrator went further and concluded that discharge was an excessive penalty for the misconduct. In so doing, he exceeded his authority.

This court construed a similar arbitration clause in *Truck Drivers and Helpers Union, Local 784 v. Ulry-Talbert Company,* 330 F.2d 562 (8th Cir.1964). In that case the court stated:

The arbitration clause in the agreement between the parties is narrowly drawn. It appears to be the clear intendment of the agreement that in the event of the discharge of an employee by the employer the arbitrator is forbidden to substitute his judgment for that of the employer. He had the right, however, to reverse the employer's decision but only upon making specific findings; that is, that the charge was "not supported by the facts, and that the management has acted arbitrarily and in bad faith or in violation of the express terms of this Agreement." [*Id.* at 562.]

Here the collective bargaining agreement provides that the only arbitrable issue be the fact of an employee's participation in a prohibited activity.

The Union contends the arbitrator's authority properly extended to interpreting the phrase "fact of participation" in the agreement. We disagree. As the Supreme Court has stated, "An arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp., supra,* 363 U.S. at 597, 80 S.Ct. at 1361. The agreement clearly and specifically states that an employee disciplined under Article 31 has no recourse, except "as to the fact of participation." Under the agreement, therefore, the arbitrator has no authority to evaluate the propriety of the Company's discipline.

The case at bar differs substantially from the many cases decided by this court upholding arbitrator's awards. *See, e.g., International Brotherhood of Electrical Workers, Local Union No. 53, AFL–CIO v. Sho-Me Power Corp.,* 715 F.2d 1322 (8th Cir. 1983); *Lackawanna Leather Co. v. United Food & Commercial Workers International Union, AFL–CIO & CLC,* 706 F.2d 228 (8th Cir.1983) (en banc). In these and many other cases, this court has emphasized that it accords great deference to the arbitrator's interpretation and construction of the applicable provisions of the collective bargaining agreement. This opinion does not depart from this well established doctrine. In *Sho-Me Power,* this court reversed the district court's judgment refusing to enforce an arbitrator's award. There the arbitrator had interpreted a section of the collective bargaining agreement providing that an employee's seniority could be lost by "discharge for cause," as requiring just or reasonable cause to discharge an employee.

The arbitrator held that the company did not have just cause to discharge its employee and ordered him reinstated. Our decision affirmed the arbitrator's authority to interpret the agreement in this way.

In *Lackawanna Leather,* we upheld the arbitrator's authority to interpret and apply the relevant sections of the collective bargaining agreement, including sections not specifically put at issue by the parties during the arbitration process. We stated that "[w]ithout evidence as to the meaning of the contract clause in question, an arbitrator may give that clause a reading ordinary to similar labor contracts." *Lackawanna Leather Co. v. United Food & Commercial Workers International Union, AFL–CIO & CLC, supra,* 706 F.2d at 231. Our holding, however, did not authorize an arbitrator to exceed the authority granted to him by the parties in the collective bargaining agreement.

In the instant case, the arbitrator's award is not the result of his interpretation of the agreement within the context of a specific set of facts. Nowhere does the agreement give the arbitrator the authority to determine the fairness or equity of the company's discipline of employees who engage in work stoppages or other prohibitive activities. Moreover, there are no tensions between sections inherent in the agreement and no ambiguities within the sections. The agreement is not susceptible to any construction beyond its plain meaning.

Although "[t]here is a significant distinction to be recognized between the opinion of an arbitrator and the award he actually renders," *Resilient Floor and Decorative Covering Workers, Local Union 1179 v. Welco Manufacturing Co.,* 542 F.2d at 1029, 1031 (8th Cir.1976), we observe that the arbitrator's opinion reflected the arbitrator's efforts to balance the equities of the situation, rather than to interpret and apply the agreement. Thus, in his opinion, the arbitrator stated:

> Where an employee is guilty of wrongdoing but management is also at fault in some respects in connection with the employee's conduct, the Arbitrator may be persuaded to reduce or set aside the penalty assessed by management. It is felt that the President of the Company contributed to this situation by his actions relative to the distribution of the payroll and by not having previously taken steps to make certain that the checks would be accurate. His actions are not excused because his accountant was in Kansas City and the computer at the bank which prepared the checks on his behalf was not programmed to issue checks where there was so much as one thousand * * * dollars overtime on six checks. Pierson, an experienced producer knew or should have anticipated this problem.

While the Company's form of discipline may have been severe, this fact is neither the arbitrator's nor our concern. The arbitrator does not point to, nor can we find, any provision of the agreement that grants the arbitrator the authority to balance the equities of the company's discipline for an employee who engaged in a work stoppage. An employee disciplined under Article 31 has "no recourse to any other provisions of this Agreement, except as to the fact of participation."

III. *Conclusion.*

Under the contract, the arbitrator's authority extended only to finding whether McCarthy engaged in a work stoppage. The district court correctly determined that the arbitrator decided issues not properly before him and, therefore, that the arbitrator's award failed to draw its essence from the collective bargaining agreement. Accordingly, we affirm the judgment of the district court in partially setting aside the arbitrator's award.