**ACTORS' EQUITY ASSOCIATION, Appellee,**

v.

**AMERICAN DINNER THEATRE INSTITUTE; Firehouse Dinner Theatre; and Richard Mueller, Appellants.**

**ACTORS' EQUITY ASSOCIATION, Appellant,**

v.

**AMERICAN DINNER THEATRE INSTITUTE; Firehouse Dinner Theatre; and Richard Mueller, Appellees.**

Nos. 85–2334, 85–2368.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1986.

Decided Oct. 7, 1986.

Rehearing Denied Nov. 7, 1986.

Warren S. Zweiback, Omaha, Neb., for appellants.

Peter R. Meyers, Chicago, Ill., for appellees.

Before JOHN R. GIBSON and MAGILL, Circuit Judges; and REGAN, Senior District Judge.*

MAGILL, Circuit Judge.

This is an appeal from an order of the district court, granting attorneys' fees to Actors' Equity Association in an action to compel arbitration of a wrongful discharge. The action was based upon § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. We reverse.

## I. BACKGROUND.

On February 1, 1982, appellee, Actors' Equity Association ("Actors") and appellant, American Dinner Theatre Institute ("Theatre") entered into a national collective bargaining agreement ("Agreement"). Actors is the national bargaining agent for all acting and performing employees of many dinner theatres throughout the country, maintaining its midwest office in Chicago, Illinois. Theatre is an unincorporated trade association from Sarasota, Florida, which acts on behalf of its members, including the appellants Firehouse Dinner Theatre ("Firehouse") and Richard Mueller.[1] Firehouse is a Nebraska limited partnership with its sole place of business in Omaha, Nebraska. Mueller is the producer of Firehouse and a resident of Omaha, Nebraska. Neither Firehouse nor Mueller has had any substantial contacts with Illinois.

On December 23, 1983, Mueller terminated the services of actress Wysandria Woolsey at Firehouse. Ms. Woolsey was terminated because she allegedly did not "play her role with sufficient believability," which affected her performance and that of the remainder of the cast.

Rule 67E of the Agreement permitted termination only for "just cause." Any challenge under Rule 67E by Actors was required to go to mandatory arbitration under Rule 4 of the Agreement. Rule 67E also called for arbitration at "the site of the Dinner Theatre" (Omaha, Nebraska).

On January 27, 1984, Actors filed a demand for arbitration with the American Arbitration Association at Actors' regional office in Chicago and requested a hearing in Chicago. On March 22, 1984, the appellants responded by asserting that venue was proper only in Omaha, pursuant to Rules 4 and 67E of the Agreement. On April 3, 1984, the American Arbitration Association in Chicago advised all parties that the appellants were correct and that the arbitration proceeding was to be held in Omaha.

On June 4, 1984, the appellants informed Actors, by letter, that pre-dispute mandatory arbitration agreements were illegal under Nebraska state law. In the letter, the appellants also asserted that pursuant to Rule 34 of the Agreement, the parties had contracted to render nugatory *any* provision of the Agreement that violated state law. Rule 34 provided:

> To the extent that *any* rule or provision contained herein is illegal or unenforceable in any state or governmental subdivision thereof, county or city, such rule or provision shall be deemed not to be binding upon the parties therein. Any such illegality or unenforceability of any rule, provision or agreement hereunder shall not affect any other rule, provision or agreement herein. (Emphasis added).

Irrespective of the general principles of federal arbitration law, the appellants thus contended that the parties, in Rule 34 of the Agreement, freely and willingly contracted to limit the scope of arbitration to matters which were legal and enforceable under Nebraska law. Actors thereafter contacted the appellants on several occasions, notifying them that, according to the law, binding arbitration was required.

---

\* The HON. JOHN K. REGAN, United States Senior District Judge for the Eastern District of Missouri, sitting by designation.

1. Later discussion refers to the appellants collectively as "the appellants."

On September 25, 1984, Actors instituted an action against the appellants in the United States District Court for the Northern District of Illinois, Eastern Division, seeking to compel arbitration under section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. Actors also sought a declaratory judgment under 28 U.S.C. §§ 2201 and 2202, along with attorneys' fees and costs.

On October 18, 1984, the appellants filed a motion to dismiss, based on the ground that the Illinois court had no personal jurisdiction over the appellants. On March 1, 1985, Judge George N. Leighton granted the Illinois dismissal holding:

> It is *clear* from the parties' submissions that the entirety of this action was concentrated in Omaha, Nebraska. Any alleged injury occurred in Nebraska. The allegedly injured party Wysandria Woolsey, is a resident of either Nebraska or Colorado. Defendant Mueller resides in Omaha, and defendant Firehouse is also located in Omaha. Consequently, the court concludes that defendants' conduct is too remote from Illinois to justify the assertion of personal jurisdiction over them.
> * * * Accordingly, in the interest of justice, it is ordered that this suit is transferred to the United States District Court for the District of Nebraska (Omaha), *where this action should have been brought.* (Emphasis added).

The transfer to Omaha was completed on March 13, 1985. On May 3, 1985, Actors filed a motion for summary judgment. On July 1, 1985, the district court granted Actors' motion and ordered the appellants to proceed to arbitration of the dispute. Thereafter, neither party resisted arbitration.

In the July 1 ruling, the district court also ordered a hearing to determine whether an award of attorneys' fees to Actors would be appropriate. This hearing was held in late July. On August 13, 1985, the district court found the award "proper," citing *Lackawanna Leather Co. v. United Food & Commercial Workers International*

*tional Union,* 706 F.2d 228, 232 (8th Cir. 1983) (en banc), and asked Actors to submit an itemization of fees.

On October 2, 1985, the district court entered an award of attorneys' fees and expenses in favor of Actors in the amount of $5,484.45, which included only those fees and expenses incurred after the transfer to Nebraska. The appellants appeal the award of attorneys' fees. Actors cross-appeals for additional attorneys' fees and costs incurred prior to the transfer from Illinois to Nebraska in the sum of $7,571.95.

## II. "AMERICAN RULE" ON ATTORNEYS' FEES.

### A. The Bad Faith Exception.

The appellants contend that the district court erred in awarding attorneys' fees to Actors based on the court's findings of bad faith. The appellants assert that at all times they defended and argued against arbitration in good faith.

The well-settled "American rule" on the payment of attorneys' fees in federal litigation is that, in the absence of a statute or an enforceable contract, each party is responsible for his or her own fees. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 257, 95 S.Ct. 1612, 1616, 1621, 44 L.Ed.2d 141 (1975). Over the years, however, courts have established limited exceptions to the rule. One such exception authorizes a federal court to award attorneys' fees to the prevailing party "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 258–59, 95 S.Ct. at 1622 (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)); *see Lackawanna Leather Co. v. United Food & Commercial Workers International Union,* 706 F.2d 228, 232 (8th Cir.1983) (en banc); *General Drivers, Helpers and Truck Terminal Employees, Local No. 120 v. Sears, Roebuck & Co.,* 535 F.2d 1072, 1076–77 (8th Cir.1976).

Crucial to the evaluation of the bad faith exception is the Supreme Court's admonition that the underlying rationale of fee-shifting is punishment of the wrongdoer rather than compensation of the victim. *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973); *accord Nepera Chemical, Inc. v. Sea-Land Service, Inc.*, 794 F.2d 688, 702 (D.C.Cir.1986). This rationale accounts for the stringency of the bad faith standard. *See Nepera*, 794 F.2d at 702 & n. 108. Accordingly, fee-shifting should occur "only when extraordinary circumstances or dominating reasons of fairness so demand." *Id.* at 702 & nn. 109–10.

Since *Alyeska*, this court has recognized that attorneys' fees may be awarded in an action brought under section 301, but only where the losing party clearly acted in bad faith. *International Brotherhood of Electrical Workers, Local No. 265 v. O.K. Electric Co.*, 793 F.2d 214, 216–17 (8th Cir.1986) (per curiam) (affirmance of no award of attorneys' fees in action to enforce arbitration award); *Industrial Ass'n of Heat and Frost Insulators and Asbestos Workers, Local Union 34 v. General Pipe Covering, Inc.*, 792 F.2d 96, 102 (8th Cir.1986) (reversal of attorneys' fees in action to enforce arbitration award); *International Union, United Automobile, Aerospace & Agriculture Implement Workers v. United Farm Tools, Inc.*, 762 F.2d 76, 77 (8th Cir.1985) (per curiam) (affirmance of attorneys' fees in action to enforce arbitration award); *Cronin v. Sears, Roebuck & Co.*, 588 F.2d 616, 620 (8th Cir.1978) (reversal of attorneys' fees in action for breach of collective bargaining agreement); *General Drivers*, 535 F.2d 1072, 1076–77 (no attorneys' fees in action to enforce arbitration award); *Richardson v. Communications Workers*, 530 F.2d 126, 132–33 (8th Cir.) (affirmance of attorneys' fees for unions' intentional failure to discharge its fiduciary duty), *cert. denied*, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976).

## B. Standards of Review.

■ A finding of bad faith or lack thereof is a factual determination for the trial court and may be reversed only if clearly erroneous. *See* Fed.R.Civ.P. 52(a); *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Courts have indicated that bad faith may exist where a party's claim is deemed to be totally without merit. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (Title VII case). The Supreme Court has pointed out, however, that attorneys' fees should not be awarded unless the claim was "frivolous, unreasonable, or groundless, or [where the party] continued to litigate after it clearly became so." *Id.* at 422, 98 S.Ct. at 700. The Court cautioned trial courts as follows:

[I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, *because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.*

*Id.* at 421–22, 98 S.Ct. at 700 (emphasis added).

■ Once the trial court has made a finding of bad faith, an award of attorneys' fees is within its discretionary power and will not be disturbed absent an abuse of discretion. *Richardson v. Communications Workers*, 530 F.2d 126, 133 (8th Cir.) *cert. denied*, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976). The legal principles that the court relies on "to inform its discretion, however, are subject to *de novo* review." *Lewis v. Anderson*, 692 F.2d 1267, 1269 (9th Cir.1982) (citing *Merola v. Atlantic Richfield Co.*, 493 F.2d 292, 295 (3d Cir. 1974)); *see Perry v. O'Donnell*, 759 F.2d 702, 704 (9th Cir.1985). Where the court errs "by utilizing improper standards or procedures in determining fees, an abuse of discretion occurs." *Merola*, 493 F.2d at 295.

To properly exercise its discretion, the trial court "must balance the equities between the parties." *Ford v. Temple Hospital*, 790 F.2d 342, 347 (3d Cir.1986). It is clear that the award of attorneys' fees is within the court's "inherent equitable power," *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973), and that this power should be exercised only "whenever 'overriding considerations indicate the need for such a recovery.'" *Id.* (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391–92, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970)). Courts should be cautious in exercising this discretion because the broad and "uncritical imposition of attorneys' fees can have an undesirable chilling effect on an attorney's legitimate ethical obligation to represent his client zealously." *Temple Hospital*, 790 F.2d at 349.

■ In light of the above standards, our review of the district court's determination must proceed in two steps. First, we must determine whether the district court's finding of bad faith was clearly erroneous. If so, then the award of attorneys' fees under the bad faith exception was improper. If, however, the finding of bad faith was not clearly erroneous, then we must proceed to step two to determine whether the actual award of attorneys' fees was an abuse of discretion.

## III. DISCUSSION.

### A. Bad Faith Finding.

Section 301 of the Labor-Management Relations Act does not authorize an award of attorneys' fees to the prevailing party. *See* 29 U.S.C. § 185. The district court's order, however, indicates that the award of attorneys' fees was based upon the bad faith exception to the "American rule." *See* District Court Order (dated August 13, 1985) (citing *Lackawanna Leather Co. v. United Food & Commercial Workers International Union*, 706 F.2d 228, 232 (8th Cir.1983) (en banc)). Although the court did not specify the basis for its bad faith finding, *see* District Court Orders (dated August 13, 1985, and October 2, 1985), its

conclusion is sufficient for us to make the necessary review.

In this court's view, bad faith would be evidenced in the present case by a showing that the appellants intentionally advanced a frivolous contention for an ulterior purpose, such as harassment or delay. *See Ford v. Temple Hospital*, 790 F.2d 342, 347 (3d Cir.1986) (similar questions in Title VII case). Actors contend that this is precisely what the appellants did when the appellants argued that the mandatory arbitration provision of the Agreement was unenforceable pursuant to Rule 34 of the Agreement. If Actors is correct, then a finding of bad faith would not be clearly erroneous. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). If, however, the appellants' contentions had merit, then a finding of bad faith could not be justified. *See id.* We, therefore, must turn briefly to substantive federal labor law and to the law of arbitration in Nebraska.

■ Substantive principles of federal labor law must be applied to issues raised in suits covered by section 301. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985); *see Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). Additionally, federal labor law has been determined to pre-empt state law when the state law "conflicts with federal law or would frustrate the federal scheme * * *." *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1189, 55 L.Ed.2d 443 (1978); *see Lucas Flour*, 396 U.S. at 104, 82 S.Ct. at 577.

Although federal labor law governs section 301 suits, it is also well-settled that a party cannot be compelled to arbitrate a matter unless it has contracted to do so. *AT & T Technologies, Inc. v. Communications Workers of America*, — U.S. —, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *Nolde Brothers, Inc. v. Bakery Workers*, 430 U.S. 243, 250–51, 97 S.Ct. 1067, 1071, 51 L.Ed.2d 300 (1977); *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974); *Unit-*

*ed Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Whether the contract, by its terms, could be construed as requiring arbitration is a matter of law and thus must first be decided by the court, not the arbitrators. *AT & T Technologies,* —— U.S. at ——, 106 S.Ct. at 1418; *United Steelworkers,* 363 U.S. at 582, 80 S.Ct. at 1352. In determining whether an agreement provides for arbitration of the dispute, courts must keep in mind the strong presumption of arbitrability where such a provision exists. *See Nolde Brothers,* 430 U.S. at 254–55, 97 S.Ct. at 1073–74. When, however, there is "positive assurance" that the arbitration clause does not cover the dispute, the court does not have to order arbitration. *United Steelworkers,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53. The court may so act because where there is "positive assurance," even if the same issue ultimately came to the arbitrators, they would be obligated to decide against arbitration. *See Woodcrest Nursing Home v. Local 144, Hotel Union,* 788 F.2d 894, 898 (2d Cir.1986).

■ Moreover, in determining whether a duty to arbitrate exists, the court must examine both the arbitration clause itself and the other terms of the contract bearing on arbitration. *Woodcrest,* 788 F.2d at 898. Although the arbitration clause itself may appear to order arbitration, other provisions of the contract may clearly and unambiguously negate or limit the applicability of the arbitration clause. *See Nolde Brothers,* 430 U.S. at 255, 97 S.Ct. at 1074.

■ In light of the above general rules of law, we now turn to the facts in this case in order to determine whether the appellants' arguments were frivolous, and thus made or advanced in bad faith.

Rules 4 and 67E of the Agreement, by themselves, clearly require arbitration of disputes regarding termination. Rule 34, however, renders any other provision in the Agreement "not binding" if that provision is illegal or unenforceable under state law. Taking these provisions together, the appellants contend that because Nebraska

was the correct site for arbitration, and because Nebraska law clearly prohibits pre-dispute mandatory arbitration agreements, Rule 34 rendered the arbitration clause nugatory. In response, Actors counters, and the district court apparently agreed, that such an argument clearly contradicts the notion of federal pre-emption in this area of labor law, is frivolous, and is thus indicative of bad faith. We cannot agree.

If the appellants had contended that Nebraska law controlled the Agreement, we would agree that such an argument was clearly contrary to federal law, frivolous and made in bad faith. *See Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985); *Carey v. General Electric Co.,* 213 F.Supp. 276, 280 (S.D.N.Y.1962) (clause in contract provided that New York law controlled), *modified on other grounds,* 315 F.2d 499 (2d Cir.1963), *cert. denied,* 377 U.S. 908, 84 S.Ct. 1162, 12 L.Ed.2d 179 (1964); *cf. Southland Corp. v. Keating,* 465 U.S. 1, 16, 104 S.Ct. 852, 861, 79 L.Ed.2d 1 (1984) (California law conflicting with Federal Arbitration Act deemed in violation of supremacy clause). The appellants' contention, however, was *not* that Nebraska law *controlled the Agreement.* Rather, the appellants appear to contend that the parties, in Rule 34 of the Agreement, agreed to limit the *scope* of arbitration in accordance with state law, here Nebraska law. For the past ninety years, the Nebraska Supreme Court has "consistently held that an arbitration agreement entered into *before* a dispute arises, denying to the parties their right to seek assistance of the courts is contrary to public policy and is not enforceable." *Overland Constructors v. Millard School District,* 220 Neb. 220, 369 N.W.2d 69, 73 (1985) (emphasis by court); *see City of Lincoln v. Soukup,* 215 Neb. 732, 340 N.W.2d 420, 422–23 (Neb.1983) (per curiam). Thus, it appears that the appellants were simply arguing that the scope of their duty to arbitrate was limited by the Agreement. *See Nolde Brothers,* 430 U.S. at 255, 97 S.Ct. at 1074. We do

not see how this argument equates to evidence of frivolity or vexatiousness which rises to the level of bad faith. Additionally, although the appellants' argument is concededly novel, we perceive no "extraordinary circumstances or dominating reasons of fairness," *see Nepera Chemical, Inc. v. Sea-Land Service, Inc.*, 794 F.2d 688, 702 (D.C.Cir.1986), which would require fee-shifting in this unusual factual context.

Moreover, Actors' other contentions of bad faith must also fail. First, the appellants' refusal to schedule or participate in arbitration proceedings before the proceedings were located at the proper site is not indicative of bad faith. The appellants were correct in their assertions that arbitration was to take place in Omaha, Nebraska. Second, two recent cases affirm the fact that pre-dispute mandatory arbitration clauses are illegal in Nebraska. *See Overland Constructors*, 369 N.W.2d 69; *Soukup*, 340 N.W.2d 420. Finally, Actors' claim that it continually warned the appellants of its allegedly incorrect position does not necessarily mean that the appellants' contentions were frivolous. *See Obin v. District No. 9, International Ass'n of Machinists*, 651 F.2d 574, 586 (8th Cir.1981) (reversal of attorneys' fees where plaintiff brought a suit under Title VII and section 301 despite "warnings by the Company and the Union in their answers to Obin's complaints and by separate letters to Obin's counsel that they believed the allegations to be meritless and that they would seek an award of attorneys' fees if he further pressed the case.").

Finally, any reliance based on cases such as *Industrial Ass'n of Heat and Frost Insulators and Asbestos Workers, Local Union 34 v. General Pipe Covering, Inc.*, 792 F.2d 96 (8th Cir.1986), is misplaced. Unlike *General Pipe Covering* this is not a case involving enforcement of an arbitration award. Nor does this case involve a clear breach of a fiduciary duty by the appellants. *See Richardson v. Communications Workers*, 530 F.2d 126 (8th Cir.), *cert. denied*, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976).

**B. Balancing the Equities.**

Upon further examination of the record below, it is also apparent that the district court failed to balance the equities of the parties in awarding attorneys' fees. *Compare Ford v. Temple Hospital*, 790 F.2d 342, 348–50 (3d Cir.1986) (detailed findings of both parties' conduct in awarding attorneys' fees). Because this omission is one of law, we are not bound by the clearly erroneous standard; rather, this failure is subject to a *de novo* review. *See Lewis v. Anderson*, 692 F.2d at 1267, 1269 (9th Cir. 1982).

Although the bulk of the district court's analysis focused on the appellants' conduct, the facts show that Actors twice attempted arbitration at sites other than Omaha, Nebraska, the only proper site pursuant to Rule 67E of the Agreement. First, Actors attempted to initiate arbitration at their regional office in Chicago. Second, Actors later instituted an action against the appellants in federal district court in Illinois. In this action, Actors sought to compel arbitration under section 301, to receive a declaratory judgment under 28 U.S.C. §§ 2201 and 2202, and to receive attorneys' fees and costs. As Judge Leighton held, the courts of Illinois had no personal jurisdiction over the appellants, because it was "clear" that the action was concentrated in Omaha, the place "where [the] action should have been brought." These facts indicate that Actors may have been trying to delay arbitration or to arbitrate in a forum convenient only to them, albeit totally improper.

In balancing the appellants' allegedly frivolous claim against Actors' questionable conduct, it is even more apparent that the equities of this case require a reversal of attorneys' fees.

**IV. CONCLUSION.**

It should be made clear what we do *not* decide today. We do not purport to hold that Nebraska law is superior to federal labor law. What we are deciding today is

whether the appellants acted in bad faith in contending that the contract terms limited the scope of the duty to arbitrate. Because we hold in the negative, we accordingly must reverse the award of attorneys' fees to Actors. Moreover, because we fail to find bad faith on the part of the appellants, we need not reach Actors' claim that it is entitled to attorneys' fees for the Illinois proceedings.