# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2211
_____

Minnesota Nurses Association

*Plaintiff - Appellee*

v.

North Memorial Health Care; North Memorial Medical Center

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 9, 2016
Filed: May 13, 2016

_____

Before SHEPHERD, BEAM, and KELLY, Circuit Judges.

_____

BEAM, Circuit Judge.

Appellant North Memorial Health Care owns and operates Appellant North Memorial Medical Center (North Memorial or Medical Center), a hospital. North Memorial employs nurses represented by Appellee, Minnesota Nurses Association (MNA or the Union), which employment is governed by a collective bargaining agreement (CBA). Pursuant to the CBA, North Memorial and MNA referred a

grievance to arbitration. Unhappy with the arbitrator's decision, MNA moved the district court[1] to vacate the arbitral award and the district court granted the motion in part. We affirm.

## I. BACKGROUND

Article 23 part I of the CBA, in effect at all times relevant to this dispute, provides: "A nurse with thirty (30) calendar years of service at age fifty-five (55) or above will not have a weekend obligation. . . . The above language will apply except where this would deprive patients of needed nursing service." Nurse Lynette Drake, knowing she would soon meet these criteria, submitted a written request to North Memorial that she be afforded the privilege of work-free weekends once she became eligible on May 17, 2013. Drake's scheduling manager denied her request, invoking Article 23(I)'s exception for needed nursing service. Under a procedure set out in the CBA, Drake grieved the denial, North Memorial denied the grievance, and MNA, on behalf of Drake, referred the matter to arbitration. As the issue before us centers on the arbitrator's decision, we describe it here in some detail.

The CBA defines a grievance as "any controversy arising over the interpretation of or the adherence to the terms and provisions of this Agreement." In a letter to North Memorial included in the exhibits received in evidence by the arbitrator, MNA described the grievance as follows: "The Union alleges that the employer is in violation of Section 23 – Weekends, and all other applicable areas of the contract. The employer has been and continues to deny Ms. Drake the 30 year-no weekend option as defined in the [CBA]." North Memorial characterized the issue before the arbitrator in a post-hearing brief as follows: "Did the Medical Center violate Section 23(I) when it refused to regularly schedule the Grievant with no weekends?" On the

---

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

basis of these characterizations, the arbitrator set out the issue before him in the form of two questions: "1. Did the Medical Center violate Article 23(I) of the Contract when it refused to regularly schedule the Grievant with no weekend work?"; and "2. If so, what is the appropriate remedy?"

After discussing the facts and the positions of each party, the decision set out the controlling rule of law that "absent contract language to the contrary, on matters involving the right of the hospital to schedule work, the hospital should be given broad latitude and the hospital's decision should not be set aside unless found to be arbitrary, capricious or discriminatory." The decision next observed that under Article 23(I) qualified nurses are "not required to work weekends," subject to the exception for needed nursing service. The decision then noted that a witness for MNA described several scheduling methods as proposed alternatives to North Memorial's current method to show "that the 'exception' proviso is not applicable since there were numerous ways that North Memorial could use to provide the Grievant with the no scheduled weekend work benefit and simultaneously ensure that patients are not 'deprived of needed nursing service.'" After analyzing and rejecting as unworkable each of those proposed alternatives, the decision stated,

> Based upon the foregoing, none of the "suggestions" proffered by the Union and Grievant allowing the Medical Center to guarantee the Grievant no scheduled weekend work and still meet its core staffing needs when a work schedule was posted from May 17, 2013, to the present date were persuasion [sic]. Thus, during this time period the Employer had the expressed right to invoke the "exception" proviso in Section 23(I) and not grant the Grievant the no scheduled weekend work benefit.

The decision continued,

> Safe patient care should be goal [sic] of the Parties and the Grievant going forward from this date. To accomplish this goal, the

-3-

Arbitrator agrees with the Medical Center that the Parties need a prospective standard for evaluating patient care in accordance with Section 23(I).

The most sensible, reasonable and fairest solution for future weekend scheduling in accordance with Section 23(I), without the Medical Center being arbitrary, capricious or discriminatory, is to have all qualifying nurses (55 years or older and 30 calendar years of service) equally share (divide) weekend work if the Employer invokes the "exception" proviso to protect patient care.

. . . .

. . . [I]t is arbitrary, capricious and discriminatory to have the Grievant work all of the future scheduled weekends when similarly-situated qualifying nurses are exempt from this work.

After explaining the arbitrator's reasoning for this prospective remedy, the decision concluded:

Based upon the foregoing and the entire record, the Employer is found to have not violated Section 23(I) from the date of the Grievant's eligibility for the no scheduled weekend work benefit (May 17, 2013) to the present. However, from the date of this award, if the Employer invokes the "exception" proviso to compel qualifying nurses to work on weekends the number of required weekends shall be equally shared (divided) among those qualifying nurses as noted above.

MNA then filed a motion to vacate or, in the alternative, modify or correct the arbitration award in Minnesota state district court under the Minnesota Uniform Arbitration Act. Minn. Stat. §§ 572B.23, .24. North Memorial removed the case to federal district court, noting the arbitration was conducted pursuant to the CBA, thereby conferring federal jurisdiction under the Labor Management Relations Act (LMRA). 29 U.S.C. § 185. The district court granted in part the motion to vacate on two alternate grounds. First, it agreed with MNA that by imposing a prospective

-4-

remedy on the parties the arbitrator moved beyond the scope of the issue presented to him. The district court observed that the arbitrator "found no violation [of the CBA] but nonetheless imposed additional obligations on the parties. There is no indication that the parties intended [the arbitrator] to issue a remedy without first finding a violation on the part of North Memorial." Minn. Nurses Ass'n v. Amended N. Mem'l Health Care, No. 14-4529, 2015 WL 2373446, at *3 (D. Minn. May 18, 2015) (citation omitted). Second, it agreed with MNA that even if the arbitrator was authorized to issue a remedy despite finding no violation of the CBA, the remedy he prescribed was beyond his authority because it "effectively nullified other provisions of the CBA."[2] Id. The district court, therefore, vacated the portion of the arbitrator's award requiring that weekend shifts filled by qualifying nurses be divided equally among them. North Memorial appeals.

## II. DISCUSSION

We review de novo a district court's conclusions of law made when reviewing an arbitrator's decision. Keebler Co. v. Milk Drivers & Dairy Emps. Union, Local No. 471, 80 F.3d 284, 287 n.2 (8th Cir. 1996). Our review of the arbitrator's decision under the LMRA, however, is extremely deferential, limited only "to determining whether: (1) the parties agreed to arbitrate; and (2) the arbitrator had the power to make the award that he made." Id. at 287. We are concerned in this case only with the second inquiry. It is a settled rule that an arbitrator's authority is limited by the issues the parties present to him for decision; he must "stay[] within the areas marked out for his consideration," and may not go "beyond the submission." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 598 (1960). "When

---

[2]Two Articles of the CBA identified by MNA, Articles 6 and 24, limit the right of North Memorial to unilaterally alter nurses' "work agreements." The district court concluded, and MNA now argues, that the arbitrator's remedy of dividing weekends among qualified nurses, some of whom receive the no-weekends benefit, conflicts with these provisions. As we explain, we do not reach this issue.

two parties submit an issue to arbitration, it confers authority upon the arbitrator to decide *that* issue." Local 238 Int'l Bhd. Of Teamsters v. Cargill, Inc., 66 F.3d 988, 990-91 (8th Cir. 1995). Thus, "[a] court may vacate a labor arbitration award if the arbitrator exceeds the scope of the submission by ruling on issues not presented to him by the parties." Lackawanna Leather Co. v. United Food & Commercial Workers Int'l Union, AFL-CIO & CLC, 706 F.2d 228, 234 (8th Cir. 1983) (en banc). All the same, "an arbitrator's interpretation of the scope of the issue submitted to him is entitled to the same deference accorded his interpretation of the [CBA]." John Morrell & Co. v. Local Union 304A of the United Food & Commercial Workers, 913 F.2d 544, 560 (8th Cir. 1990) (quoting Pack Concrete, Inc. v. Cunningham, 866 F.2d 283, 285 (9th Cir. 1989)).

North Memorial first argues that the arbitrator's remedy is consistent with the CBA. While this may or may not be true, it is beside the point. "An arbitrator's authority derives from and is limited by the CBA." Midwest Div.-LSH, LLC v. Nurses United for Improved Patient Care, CNA/NNOC, 720 F.3d 648, 650 (8th Cir. 2013). Under the CBA, the parties delegated to the arbitrator the authority to resolve "any controversy arising over the interpretation of or the adherence to the terms and provisions of [that] Agreement." Within the scope of such a controversy, our deference to the arbitrator's interpretation of the CBA permits us only to inquire whether "the arbitrator properly considered the contractual arrangement between the parties when making his decision." Fairview Southdale Hosp. v. Minn. Nurses Ass'n, 943 F.2d 809, 811 (8th Cir. 1991) (per curiam). But the CBA has not delegated the arbitrator authority to resolve disputes not presented to him by the parties, and the extent of the dispute the parties have referred to arbitration is determined by the submission, not the CBA.

North Memorial next argues that the district court was incorrect in characterizing the arbitrator's decision as imposing a remedy after finding that North Memorial had not violated the CBA. The arbitrator, according to North Memorial,

-6-

found there was no violation only on the condition that his prospective remedy be implemented to prevent arbitrary application of Article 23(I)'s exception in the future. That is not how we read the arbitrator's decision. The decision's "Analysis of the Evidence" portion is unambiguously arranged, first, into an analysis of and conclusion as to whether North Memorial violated the act when it denied Drake the no-weekends benefit and, second, the fashioning of a means to achieve the goal of "[s]afe patient care . . . going forward from this date." No language in the decision conditions the finding of no violation to the imposition of the prospective remedy, which the decision makes clear is meant to preemptively address the possibility of a future violation. The arbitrator's conclusion, quoted above, confirms this reading by separately and independently addressing the periods before and after the award.

North Memorial also contends that MNA's proposed, alternative scheduling methods "encouraged" the arbitrator to find a fair and proactive solution to the dispute. But this contention is undermined by the arbitrator's own description of that evidence:

> Union witness Trent D. Burns, Registered Nurse, Union Co-Chair, testified that the "exception" proviso is not applicable since there were numerous ways that North Memorial could use to provide the Grievant with the no scheduled weekend work benefit and simultaneously ensure that patients are not "deprived of needed nursing service."

As the arbitrator recognized, MNA presented scheduling methods as evidence that North Memorial was not entitled to invoke the needed-nursing-service exception. The decision does not indicate that the arbitrator took this evidence for a list of available "remedies" intended by MNA to address the risk of arbitrariness in future circumstances. The decision reinforces this conclusion when it transitions to its discussion of the prospective remedy, noting that "the Arbitrator *agrees with the Medical Center* that the Parties need a prospective standard for evaluating patient care

in accordance with Section 23(I)." The decision, conspicuously, does not credit MNA and its suggested scheduling methods with urging such a standard.

We think the district court correctly concluded the arbitrator was without authority to issue the prospective remedy because his decision exceeded the scope of the submission presented to him by the parties. We readily acknowledge that we are obligated to afford the arbitrator's interpretation of the scope of the issues presented the same deference as his interpretation of the CBA. But our decision does not rest on the parties' submissions; it rests on the arbitrator's own unchallenged framing of those submissions. See John Morrell, 913 F.2d at 560 (agreeing with district court that "the arbitrator's own characterization of the issue did not suggest that the issue . . . was submitted for arbitration"). The arbitrator himself interpreted the dispute as whether North Memorial was permitted under the CBA to deny Drake's scheduling request, *and if so* the manner in which *that* violation should be remedied. After framing the issue as such, the arbitrator found there was no violation to be remedied at the time North Memorial denied Drake's request, but he then continued on to issue a prospective cure for future, hypothetical disputes not before him. The arbitrator identified the general rule that arbitrary, capricious, and discriminatory exercise of a hospital's right to schedule its employees serves as a basis on which to set aside a scheduling decision. He applied this rule by treating a discrete, past decision to deny a benefit as an ongoing dispute arising each time Drake was scheduled to work a weekend shift and determining that future scheduling decisions would violate the CBA, requiring a prospective remedy. But the issue as framed by the arbitrator expressly sought only resolution of a single, past act of North Memorial's–denying Drake's request to be permanently granted a benefit she sought. Reading the plain language of the issue as set out in the decision, we do not believe the arbitrator was "even arguably . . . acting within the scope of his authority," United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987), under the parties' submission when it rewrote the CBA to remedy future, as-yet-ungrieved acts.

We therefore affirm the district court on this ground and so do not address its alternate basis for vacatur.[3]

## III.  CONCLUSION

For the reasons stated herein, we affirm the district court.

_____

---

[3]Additionally, we deny North Memorial's pending motion to strike portions of the record as moot, as our decision today is not based on any of the disputed material.