# United States Court of Appeals for the Federal Circuit

_____

**DALWINDER SIHOTA,**
*Petitioner*

**v.**

**INTERNAL REVENUE SERVICE,**
*Respondent*

_____

2017-2252

_____

Petition for review of an arbitrator's decision by Louis M. Zigman.

_____

Decided: November 13, 2018

_____

JESSICA HORNE, National Treasury Employees Union, Washington, DC, argued for petitioner. Also represented by LARRY JOSEPH ADKINS, GREGORY O'DUDEN.

ALEXANDER ORLANDO CANIZARES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM, JOSEPH H. HUNT.

_____

Before WALLACH, LINN, and HUGHES, *Circuit Judges.*

HUGHES, *Circuit Judge*.

Dalwinder Sihota petitions for review of an arbitrator's decision that reinstated her employment with the Internal Revenue Service (IRS), but imposed a ten-day suspension and reduced her back pay. Based on the current record, we cannot discern what charges, if any, support the ten-day suspension and reduction in back pay. Therefore, we vacate the arbitrator's decision and remand for further proceedings.

I

Ms. Sihota was employed as a Lead Customer Service Representative for the IRS, where she worked for over 25 years. In 2011, an IRS audit determined Ms. Sihota filed her taxes improperly in 2003. Ms. Sihota reported a loss of income based on her purported ownership of NKRS Transport, a trucking company. The IRS audit, however, revealed NKRS Transport was actually owned by Ms. Sihota's son. The IRS determined Ms. Sihota underpaid $5,341 in taxes.

The IRS and Ms. Sihota agreed to a tax settlement agreement for Ms. Sihota's 2003 federal tax liability. In the agreement, Ms. Sihota acknowledged she was not the owner of NKRS Transport and had "acted negligently in obtaining a refund . . . resulting in an underpayment of the tax required to be shown on the income tax return in the amount of $5341.00." J.A. 9. Pursuant to this agreement, Ms. Sihota repaid the tax assessment and penalty.

Because Ms. Sihota understated her tax liability, the IRS also terminated her employment with the agency. In September 2011, the IRS issued a notice of proposed adverse action. In the notice, the IRS proposed to terminate or otherwise discipline Ms. Sihota based on multiple allegations, including willful understatement of her tax liability, failure to accurately state tax liability, and failure to timely pay tax liability.

The IRS removed Ms. Sihota in May 2012. The final removal letter states "[a]ll reasons and specifications [stated in the Notice of Proposed Adverse Action] are sustained." J.A. 83. The letter further notes Ms. Sihota was charged with "either violating Section 1203(b)(9) of the IRS Restructuring and Reform Act of 1998 . . . or provisions of other laws, rules or regulations, including Title 5 CFR Section 2635.809." *Id.* Section 1203(b)(9) requires the IRS to terminate any employee who willfully understates their federal tax liability, "unless such understatement is due to reasonable cause and not willful neglect." Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, § 1203, 112 Stat. 685, 721 (1998) (codified at 26 U.S.C. § 7804 note). And 5 C.F.R. § 2635.809 states "[e]mployees shall satisfy in good faith their obligations as citizens, including all just financial obligations, especially those such as Federal, State, or local taxes that are imposed by law."

After Ms. Sihota was removed from the IRS, the National Treasury Employees Union (Union) invoked arbitration on her behalf. On November 26, 2012, the Union requested a hearing for Ms. Sihota's arbitration. That same day, counsel for IRS responded by asking "[w]hat dates are you looking at?" J.A. 39. The record, however, reflects no further communications regarding Ms. Sihota's hearing until June 2015, when the Union contacted the arbitrator and requested a hearing in January 2016. *Id* at 41. The arbitration hearing was ultimately held in July 2016—nearly four years after the IRS contacted the Union about scheduling a hearing.

During the July 2016 hearing, the Union conceded Ms. Sihota "acted negligently in obtaining a refund," but argued that "[a]cting negligently does not rise to the level of acting willfully." J.A. 162. The Union asserted the "only issue" before the arbitrator was "whether or not the action was willful." J.A. 188. According to the Union, the IRS "sustain[ed] the [section] 1203(b)(9) portion of the

charge, but they d[id] not say that they [were] sustaining the secondary issue or the in-the-alternative issue that [Ms. Sihota] violated other laws, rules, or regulations." J.A. 188.

At the hearing, the arbitrator and IRS agreed the only disputed issue was whether Ms. Sihota violated § 1203(b)(9):

> Arbitrator Zigman: So therefore, the charge that is before me is the one that was sustained, which is 1203(b)(9) and not the alternative . . . .  Okay?
>
> . . .
>
> [IRS Counsel]:  Correct.
>
> Arbitrator Zigman: And no other charges that we're dealing with?
>
> [IRS Counsel]:  Correct.

J.A. 189.

The arbitrator ultimately concluded Ms. Sihota's inclusion of the NKRS Transport loss on her 2003 federal tax return did not constitute willful neglect.  The arbitrator determined Ms. Sihota never admitted to intentionally understating her tax liability, and she credibly explained how "she *believed*, in good faith, that she was the owner of NKRS."  J.A. 23 (emphasis in original).

Nevertheless, the arbitrator found, "[b]ased on [Ms. Sihota's] failure for not having provided an accurate 2003 federal tax return because of negligence, the [IRS] did have the right to take corrective action."  J.A. 29.  Because negligence is "a much less serious act" than willful understatement of tax liability,  J.A. 20, the arbitrator held that removal was not justified "[g]iven [Ms. Sihota's] long twenty-five year history, the absence of any other documented disciplinary actions cited by the [IRS], other than three in some twenty-five years."  J.A. 28.  Accord-

ingly, the arbitrator reinstated Ms. Sihota's employment with the IRS and imposed a ten-day suspension instead.

The arbitrator also determined Ms. Sihota was not entitled to over three years of back pay that accrued after her removal. In reducing Ms. Sihota's back pay, the arbitrator relied ostensibly on the doctrine of laches. The arbitrator noted "the Union presented no evidence to justify the three year wait" to schedule a hearing. J.A. 31. Accordingly, he "found the [IRS]'s argument persuasive that the [IRS] should not be liable for back wages during the period between the date of the removal, May 24, 2012, up until the date when the Union requested to schedule the hearing on June 12, 2015." J.A. 31.

Ms. Sihota petitions for review of the arbitrator's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(9). *See also* 5 U.S.C. §§ 7121(b)(2)(B), 7703(b)(1).

## II

Under 5 U.S.C. § 7121(f), "judicial review shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board." In reviewing the arbitrator's decision, we "hold unlawful and set aside any agency action, findings, or conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

## A

We first address whether the arbitrator had authority to impose a ten-day suspension even though Ms. Sihota did not willfully understate her tax liability. Ms. Sihota contends the only charge before the arbitrator was under section 1203(b)(9), which requires *willful* understatement of federal tax liability. Because the arbitrator did not

sustain this charge, Ms. Sihota argues the arbitrator exceeded his authority by issuing a ten-day suspension. In response, the government asserts the ten-day suspension was properly based on Ms. Sihota's negligent failure to provide an accurate 2003 tax return, which was an alternate charge before the arbitrator.

In *Burroughs v. Department of the Army*, we held the MSPB can impose a penalty for a charge only if every element of the charge is proven. 918 F.2d 170, 172 (Fed. Cir. 1990). We explained that "[i]t is not permissible for the MSPB to split a single charge of an agency into several independent charges and then sustain one of the newly-formulated charges, which represents only a portion of the original charge." *Id.* And we emphasized that "[i]f the agency fails to prove one of the elements of its charge, then the entire charge must fail." *Id.* By contrast, the arbitrator may impose a lesser penalty if he "sustains fewer than all of the agency's charges . . . so long as the agency has not indicated either in its final decision or during proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges." *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999). That is, the arbitrator may impose a penalty if he sustains one or more charges, but he cannot impose a penalty based on a portion of a single charge. *Burroughs*, 918 F.2d at 172; *accord Lachance*, 178 F.3d at 1260.

If the only charge before the arbitrator was under section 1203(b)(9), then the arbitrator could not impose any penalty. Section 1203(b)(9) requires the IRS to remove any employee who willfully understates their federal tax liability. § 1203(b)(9), 112 Stat. at 721. Because the arbitrator held Ms. Sihota did not act willfully, he had no authority to impose *any* penalty under section 1203(b)(9). As we explained in *Burroughs*, it is impermissible to split a charge and impose a penalty based on a newly formulated charge. 918 F.2d at 172.

The arbitrator could have, however, imposed a mitigated penalty if he had sustained an alternate charge against Ms. Sihota. *Lachance*, 178 F.3d at 1260. Here, the arbitration decision explains the ten-day suspension was based on Ms. Sihota's negligence in obtaining a refund. The arbitrator found Ms. Sihota had failed "to timely pay her federal tax liability," and the IRS had authority to take corrective action based on her failure. J.A. 29.

Ms. Sihota argues the arbitrator could not base the suspension on alternate charges because those issues were not submitted for arbitration. "It is a settled rule that an arbitrator's authority is limited by the issues the parties present to him for decision; he must 'stay[] within the areas marked out for his consideration,' and may not go 'beyond the submission.'" *Minn. Nurses Ass'n v. N. Mem'l Health Care*, 822 F.3d 414, 418 (8th Cir. 2016) (quoting *United Steel Workers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598 (1960)). The record of the arbitration hearing supports Ms. Sihota's contention that the only charge before the arbitrator was under section 1203(b)(9). During the hearing, the Union argued the final decision letter sustained the section 1203(b)(9) portion of the charge but did not sustain any alternative charges. And the arbitrator stated "the charge that is before me is the one that was sustained, which is 1203(b)(9) and not the alternative because the letter . . . says that the charge is 1203(b)(9)." J.A. 55. Likewise, counsel for the IRS confirmed there are "no other charges that we're dealing with." J.A. 55.

Despite this colloquy at the hearing, we are not convinced the arbitrator was foreclosed from imposing a mitigated penalty based on alternate charges. The Notice of Proposed Adverse Action listed a variety of allegations, including willful understatement of tax liability, failure to accurately state tax liability, and failure to timely pay tax liability. J.A. 80. And the final removal letter stated

"[a]ll reasons and specifications are sustained." J.A. 83. Thus, it appears the IRS removed Ms. Sihota based on her failure to accurately state her tax liability *in addition* to her alleged willful understatement of her tax liability. Indeed, it was undisputed that Ms. Sihota at least acted negligently. In her tax settlement agreement with the IRS, Ms. Sihota admitted she "acted negligently in obtaining a refund . . . resulting in an underpayment of the tax required." J.A. 9. And at the arbitration hearing, the Union conceded "the taxpayer acted negligently in obtaining a refund." J.A. 162.

From this record, we cannot discern which charges were properly considered by the arbitrator or which charges support the ten-day suspension. Accordingly, we vacate and remand for further proceedings. On remand, the arbitrator must determine which charges were submitted for arbitration. If, as Ms. Sihota alleges on appeal, the only charge at issue was under section 1203(b)(9), then the arbitrator must reinstate Ms. Sihota without imposing any penalty.

B

The arbitrator also limited Ms. Sihota's back pay award by over three years. Ms. Sihota contends the arbitrator's decision violated the Back Pay Act. The government argues we should uphold the arbitrator's reduction of Ms. Sihota's back pay as a mitigated penalty.

The Back Pay Act states that an employee "affected by an unjustified or unwarranted personnel action" is entitled to receive "an amount equal to all or any part of the pay, allowances, or differentials, as applicable which the employee normally would have earned or received during the period if the personnel action had not occurred, less any amounts earned by the employee through other employment during that period." 5 U.S.C. § 5596(b)(1)(A)(i). An arbitrator, however, can deny or reduce back pay as a form of mitigated penalty. *Am. Fed.*

*of Gov. Emps., Local 2718 v. Dep't of Justice*, 768 F.2d 348, 350 (Fed. Cir. 1985). But if an arbitrator reduces back pay as a mitigated penalty, the period of withheld back pay is effectively a "time-served" suspension that must be reasonable under the *Douglas* factors. *Greenstreet v. Soc. Sec. Admin.*, 543 F.3d 705, 710 (Fed. Cir. 2008); *see Douglas v. Veterans Admin.*, 5 M.S.P.B. 313, 332–33 (1981). The period of withheld back pay cannot be based only on the time served, since this "would make the penalty depend not on the *Douglas* factors . . ., but on the speed with which (1) the employee or his representative handled the case, and (2) the tribunal rendered its decision." *Greenstreet*, 543 F.3d at 710.

To the extent the arbitrator limited back pay as a mitigated penalty, we find that his decision was arbitrary and capricious. To start, if the only charge before the arbitrator was under section 1203(b)(9), then the arbitrator had no authority to impose any mitigated penalty. And even if the arbitrator sustained an alternate charge, his decision to reduce Ms. Sihota's back pay by more than three years is still unsupported by any analysis of the *Douglas* factors. The arbitrator found a ten calendar day suspension was reasonable given Ms. Sihota's "long twenty-five year history [and] the absence of any other documented disciplinary actions, other than three in some twenty-five years." J.A. 28. Nothing in the arbitrator's decision supports what is effectively a three year "time-served" suspension, and the arbitrator never considered whether such a penalty is "within the parameters of reasonableness." *Douglas*, 5 M.S.P.B. at 333. As a result, even if the arbitrator's reduction of back pay was a mitigated penalty, we find that reducing back pay by over three years is arbitrary and capricious.

Further, the arbitrator's reliance on the doctrine of laches was legal error. Laches "bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant." *Nat'l R.R.*

*Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002). "Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282 (1961). Notably, "[t]he bar of laches [is] predicated on the prejudice to a defendant's case from the tardy entry of a prayer for compensation." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 440 (1975) (Marshall, J. concurring). "The lapse of time carries with it the memory and life of witnesses, the muniments of evidence, and other means of proof." *Costello*, 365 U.S. at 282 (quoting *Brown v. Cty. of Buena Vista*, 95 U.S. 157, 161 (1877)).

The arbitrator misapplied the doctrine of laches here. As the Supreme Court observed in *Costello*, laches bars a claim where the plaintiff's lack of diligence prejudices the defendant's access to witnesses and other evidence. *Id.* Laches does not reduce monetary damages that accrue while a dispute is pending. Even if laches were applicable, the arbitrator made no findings to suggest the IRS was prejudiced by the Union's delay. *See id.* (refusing to apply laches where a 27-year delay did not prejudice petitioner's access to evidence). For instance, the arbitrator did not find that witnesses became unavailable or evidence was lost. Instead, the arbitrator simply stated the IRS should not be liable for three years of back pay because the Union failed to schedule a hearing. To be sure, the Union's three year delay is inexplicable and might have barred Ms. Sihota's claim altogether if the IRS could show prejudice. Nevertheless, after allowing Ms. Sihota's claim to proceed, the arbitrator cannot rely on laches to reduce her back pay. On remand, the arbitrator may reduce back pay as a mitigated penalty if he sustains any alternate charges. Any reduction, however, must be within the tolerable limits of reasonableness.

## III

We vacate the arbitrator's imposition of a ten-day suspension because the current record is unclear on whether the arbitrator considered any charges aside from those under section 1203(b)(9). We also vacate the arbitrator's decision to reduce Ms. Sihota's back pay. On remand, the arbitrator must determine which charges were submitted for arbitration and whether any charges support a ten-day suspension or a reduction in back pay.

**VACATED AND REMANDED**

Costs

No costs.