NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TRACY GRIBBLE,**
*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS, SIOUX FALLS VA HEALTH SYSTEM,**
*Respondent*

---

2023-2066

---

Petition for review of an arbitrator's decision in No. 220921-09449 by James Abelsen.

---

Decided:  June 10, 2025

---

GREGORY G. WATTS, American Federation of Government Employees, Washington, DC, argued for petitioner. Also represented by DAVID A. BORER, ANDRES MYLES GRAJALES.

STEPHANIE FLEMING, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY, YAAKOV ROTH.

—————————————

Before LOURIE, DYK, and CHEN, *Circuit Judges.*

DYK, *Circuit Judge.*

Tracy Gribble petitions for review of an arbitrator's final decision mitigating her penalty for workplace misconduct from removal to a 90-day suspension without back pay. She also challenges the arbitrator's requirements that she agree to random drug testing and the release of her medical records to her employer. We *affirm.*

BACKGROUND

I

Ms. Gribble was employed as a Physical Therapist Assistant at the U.S. Department of Veterans Affairs ("VA"), Sioux Falls Health System for more than a decade. Although she was regarded by her supervisor as hard-working and dependable, she struggled with anxiety and depression. On January 6, 2022, the VA received several reports of bad odors (described as smelling like marijuana) coming from the physical therapy area and specifically around her cubicle. Use of recreational drugs, including marijuana, was and is prohibited at the workplace. *See* J.A. 482 (VA Drug-Free Workplace Program).

Following a brief investigation on January 6, 2022, the VA notified Ms. Gribble that management had a reasonable suspicion that she had been using marijuana at work and required that she submit to a drug test. Although Ms. Gribble denied drug use, she agreed to the test. The next day, Ms. Gribble's supervisor informed her about the confidential Employee Assistance Program ("EAP"), which offers support for employees struggling with personal problems, including mental health and substance abuse. Participation in EAP for substance abuse requires employees to comply with one year of random drug testing and to sign

VA Form 10-5345, a waiver authorizing the release of pertinent medical information. Ms. Gribble responded that she planned to sign up for the EAP, J.A. 440, and three days later sent her supervisor an additional email acknowledging that she needed some "professional help with some ongoing issues." J.A. 439.

By January 13, 2022, Ms. Gribble had allegedly enrolled in a program called "Choices Counseling," which was not a program covered by the EAP. On January 14, 2022, Ms. Gribble's drug test came back positive for marijuana, and she was given a mandatory referral to the EAP. The referral stated:

> As you did not disclose your illegal drug usage prior to being notified of your drug test, you do not meet the criteria for "safe harbor[]" . . . . As a result of the positive drug test, you are subject to disciplinary action, up to and including removal from Federal service. . . . Completion of a counseling or rehabilitation program through EAP within a reasonable amount of time is mandatory, typically three to six months unless reasonable time is warranted and approved in advance. Refusal to obtain counseling or rehabilitation, through EAP, will result in an immediate initiation of action to remove you from Federal service.

J.A. 425. Although Ms. Gribble later testified that she completed the Choices Counseling program, she did not produce third-party evidence of having completed any drug rehabilitation program, and, in any case, the Choices Counseling program was not covered by the EAP.

On February 28, 2022, the VA removed Ms. Gribble from service, effective March 7, 2022, based on the following four charges: (1) failure to adhere to the Drug-Free Workplace Program; (2) inappropriate conduct; (3) failure to follow expectations; and (4) unauthorized absence.

## II

Through her union, Ms. Gribble challenged her removal via the negotiated grievance procedure contained in the applicable collective bargaining agreement ("CBA"). The grievance proceeded to arbitration in January 2023, where both the union and VA agreed that the sole issue before the arbitrator was: "Did the [VA] have Just and Sufficient Cause to terminate the Grievant's employment? If not, what is the appropriate remedy?" J.A. 3. On April 23, 2023, the arbitrator issued his decision and award, granting the grievance in part.

While the arbitrator found that Ms. Gribble had committed the alleged misconduct, he found that termination was unwarranted. The arbitrator concluded that the removal seemed "unnecessarily harsh" under the applicable *Douglas* factors. J.A. 17–21. Thus, he reduced Ms. Gribble's termination to a 90-day suspension without back pay. J.A. 26. The award also provided that "[b]ack-pay for the period between the end of her suspension and the date of this order will be reduced by any earnings, unemployment benefits, or other financial compensation received by [Ms. Gribble] during that time." J.A. 26.

As part of his decision, the arbitrator required that Ms. Gribble submit to several additional requirements. The following three conditions relevant in this appeal:

> 4. Grievant will provide evidence from a licensed care facility that she is currently in or has successfully completed a drug treatment and rehabilitation program, and has complied with, or is following all recommended follow-up care.[1]

---

[1]    Under the EAP, the program must be an approved program. See J.A. 425.

6. Grievant will provide a signed release authorizing any of her current or former caregivers and treatment facilities to release all requested information pertaining to her substance abuse treatment, and her depression and anxiety-related care.

7. Grievant will be subject to random drug testing by the Employer and agrees that a positive test result will be treated as a second offense subject to all applicable rules and regulations of the employer.

J.A. 27.

Ms. Gribble petitioned this court for review of the arbitrator's final decision. We have jurisdiction pursuant to 5 U.S.C. § 7703(b)(1)(A).

## DISCUSSION

We review the decision of an arbitrator under the same standard of review that governs appeals from the Merit Systems Protection Board. 5 U.S.C. § 7121(f). Accordingly, we must affirm an arbitrator's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." *Id.* § 7703(c).

### I

Ms. Gribble argues that the arbitrator's final decision "provides no set date for [her] suspension to end or for her pay to resume," resulting "in an indeterminate 'time-served' suspension length that increases each day beyond the [decision] until [she] is fully reinstated." Pet'r's Br. 9. We have held that the length of a suspension is arbitrary when it is based solely on the employee's time served and "contains no findings or analysis concerning the appropriate length of . . . suspension." *Greenstreet v. Soc. Sec. Admin.*, 543 F.3d 705, 710 (Fed. Cir. 2008).

Ms. Gribble argues that it was arbitrary and capricious for the arbitrator to limit back pay to the date of the order rather than the date of her eventual reinstatement. *See* Pet'r's Br. 16–17. However, even if we assume without deciding that the order limited her back pay after the completion of her suspension and that limiting back pay to the date of the order was error, this would be at most harmless error.

Ms. Gribble would not be entitled to reinstatement to her position until she complied with the arbitrator's award, since completion of a drug rehabilitation program is an undisputed condition for reinstatement under the award, and Ms. Gribble was not entitled to pay until she was reinstated. *See* J.A. 567. There is no "evidence from a licensed care facility" or "medical evidence" that Ms. Gribble completed an approved program, as required by the final decision. J.A. 27. Thus, quite apart from the supposed error of denying back pay during the period between the end of her suspension and the date of the award, she could not receive pay until reinstatement, a date that had not yet occurred and would be well after the date of the award.[2]

## II

Ms. Gribble also argues that the arbitrator's final decision must be vacated and remanded because the arbitrator exceeded the scope of his authority in requiring Ms. Gribble to be subject to random drug tests and to sign a release of her medical information. As to the drug testing,

---

[2]    This is not a case where the government is the one effectuating a delay in reinstating an employee to avoid providing an employee with back pay. The government agreed at oral argument that, if Ms. Gribble had complied with the conditions of the decision and it was the government that was delaying her reinstatement, she should receive back pay. *See* Oral Arg. at 16:59–17:18.

Ms. Gribble argues that the under the EAP, drug testing is limited to one year and that the arbitrator thus exceeded his authority because "altering the [VA's] drug testing policy was not expressly or implicitly contemplated by either party." Pet'r's Br. 22. As to the waiver authorizing the release of pertinent medical information, Ms. Gribble argues that "[t]he Arbitrator was not empowered to decide potential future issues that may arise involving [Ms.] Gribble's medical information or subsequent hypothetical alleged misconduct or disciplinary issues." Pet'r's Br. 26. We conclude the conditions imposed in the arbitrator's decision were within the scope of the arbitrator's authority under the collective bargaining agreement.

Arbitrators have "broad discretion in fashioning a just award which takes account of the parties' mutual interests and conduct." *AFGE Local 2718 v. Dep't of Just., Immgr. & Naturalization Serv.*, 768 F.2d 348, 351 (Fed. Cir. 1985). On petition for review, we must determine only whether the arbitrator's decision complies with the applicable statute, regulations, and CBA and whether it has a rational basis supported by the evidence taken as a whole. *See Appleberry v. Dep't of Homeland Sec.*, 793 F.3d 1291, 1296 (Fed. Cir. 2015); *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984). Here, the CBA provided that "[t]he parties will attempt to submit a joint statement of the issue or issues to the arbitrator." J.A. 280. The arbitrator's authority was limited to the deciding the issue to be decided pursuant to arbitration. *Sihota v. Internal Revenue Serv.*, 908 F.3d 1284, 1289 (Fed. Cir. 2018). Ms. Gribble argues that the issues of random drug testing and disclosure of medical records were not submitted to arbitration.

Here, the parties defined the issue for arbitration broadly, asking if termination was not an appropriate remedy, then "what is the appropriate remedy[.]" J.A. 3. This broad framing of the issue is consistent with the broad authority vested in the arbitrator to "fashion[] a just award."

*AFGE*, 768 F.2d at 351.  Indeed, Ms. Gribble does not challenge other conditions in the arbitrator's decision, including the requirement that she complete a rehabilitation program.  Given the nature of her offense, drug testing and the release of medical information were considerations that were naturally presented by the issue before the arbitrator.  Because the imposition of these two conditions was directly related to the underlying misconduct, they were not outside the scope of the contemplated remedy.

Ms. Gribble also argues that even if the condition of random drug testing was properly submitted to the arbitrator, the arbitrator's award effectively set a "new" policy that was "contrary to the existing policy" for employees that undergo an EAP.  Pet'r's Br. 23.  But that one-year time limit for random drug testing applies only in cases when the employee agrees to participation in EAP, not where, as here, the chosen rehabilitation program was not pursuant to the EAP.  Given this difference in circumstances, extending random drug testing beyond the one-year limit contemplated was not unreasonable.  Of course, the reasonableness of the length of drug testing is an individualized, fact-intensive determination that must be made under the particular circumstances existing in this case.  Nothing in the award prevents Ms. Gribble from requesting that random drug testing should cease at some point in the future if she were able to demonstrate that testing is no longer reasonable.

Similarly, Ms. Gribble concedes that employees must consent to a limited release of medical information under the EAP, *see* Pet'r's Reply Br. 13, since participation in EAP requires employees to sign VA Form 10-5345, "Request for and Authorization to Release Health Information," which authorizes drug test results to be shared with officials on a need-to-know basis.  J.A. 426.  Ms. Gribble argues that the arbitrator's decision is unreasonable because the waiver it requires exceeds VA Form 10-5345 by

requiring unlimited future disclosures.  But the arbitrator's final decision requires only that Ms. Gribble "provide a signed release authorizing any of her current or former caregivers and treatment facilities to release all requested information pertaining to her substance abuse treatment, and her depression and anxiety-related care."  J.A. 27 (emphasis added).  We also do not read this as requiring the release of medical information that is not directly pertinent to substance abuse or depression or anxiety, which Ms. Gribble herself put at issue in the proceedings before the arbitrator.  Nor does the award prevent Ms. Gribble in the future from requesting termination of the medical record disclosure if she can establish that such an approach is no longer necessary.

## CONCLUSION

We have considered Ms. Gribble's remaining arguments and find them unpersuasive.  Because we conclude that the arbitrator's decision does not involve harmful error and was within the scope of the arbitrator's authority, we *affirm*.

## **AFFIRMED**

### COSTS

No costs.